FILED - GR
May 13, 2009 3:22 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: _ald___/_____

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **1:09-cv-429** |
| v. | ) Civil Action No. | **Paul L Maloney** |
| | ) | **Chief U.S. District Judge** |
| GEORGIA PACIFIC LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

### NATURE OF ACTION

1.     This is a civil action for injunctive relief and recovery of costs pursuant to Sections 106(a), 107(a) and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as amended, 42 U.S.C. §§ 9606 (a), 9607(a), and 9613(g)(2). The United States seeks injunctive relief in order to remedy conditions in connection with the release and threatened release of hazardous substances into the environment at a disposal area ("Operable Unit #2" or "OU2") at the Allied Paper/Portage Creek/Kalamazoo River Superfund Site in Kalamazoo and Portage Counties, Michigan (the "Site"). The United States also seeks: (1) recovery of certain environmental response costs incurred by the United States in connection with OU2; and (2) a judgment, pursuant to CERCLA Section 113(g)(2), 42 U.S.C.

§ 9613(g)(2), declaring that the Defendant is liable for any further response costs that the United States may incur as a result of releases or threatened releases of hazardous substances at OU2.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. §§ 9607 and 9613(b), and 28 U.S.C. §§ 1331 and 1345.

3.     Venue is proper in the Western District of Michigan pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. §§ 1391(b)(2) and (c), because the claim arose, and the threatened or actual releases of hazardous substances occurred, in that district.

## THE DEFENDANT

4.     Georgia Pacific LLC ("Georgia Pacific") is a corporation organized under the laws of the State of Georgia with its principal place of business in Atlanta, Georgia.

## GENERAL ALLEGATIONS

5.     The Site is located in Allegan and Kalamazoo Counties, Michigan.

6.     The Site consists of: (1) a three-mile segment of Portage Creek; (2) an 80-mile segment of the Kalamazoo River, including adjacent flood plains and wetlands; (3) six paper mill properties; and (4) five disposal areas.

7.     The Site is contaminated with hundreds of thousands of pounds of polychlorinated biphenyls ("PCBs"). The PCB contamination primarily resulted from decades of paper mill operations along the Kalamazoo River.

8.     Between 1954 and the early 1970s, several paper mills along the Kalamazoo River manufactured paper by de-inking carbonless copy paper that was coated with PCB-laden dyes. During the de-inking process, PCBs were released into the mills' waste streams. In the 1970s,

2

when de-inking operations ceased, PCBs continued to be released into the paper mills' waste streams through the process of recycling PCB-contaminated paper.

9.     From at least the 1950s to the 1960s, the paper mill companies discharged PCB-contaminated paper waste from the de-inking process directly into the Kalamazoo River. Eventually, the paper mills dried the contaminated wastes and deposited them in disposal areas at the Site.

10.    From approximately 1967 to the present, Georgia Pacific or its predecessors-in-interest owned and/or operated several mill properties and two disposal areas at the Site. The disposal areas are known as the A-Site and Willow Boulevard landfills.

11.    Approximately 22 acres in size, the A-Site Landfill is located in Plainwell, Michigan, along the Kalamazoo River. The A-Site Landfill was originally constructed in 1956 by Allied Paper, Inc. ("Allied"), which used the area for the disposal of PCB-contaminated wastes from papermaking operations at its mills. In 1975, Allied sold the A-Site Landfill to Georgia Pacific, which disposed of PCB-contaminated paper wastes from its paper recycling operations at the landfill until approximately 1987.

12.    Approximately 10 acres in size, the Willow Boulevard Landfill is located in Plainwell, Michigan, adjacent to the A-Site Landfill. The Willow Boulevard Landfill was originally constructed in 1899 by the Kalamazoo Paper Company, which disposed of paper wastes from its mill operations there. In 1967, Georgia Pacific acquired the Willow Boulevard Landfill and began disposing waste there. The waste consisted of PCB-contaminated paper residuals from its paper recycling operations at the landfill. Georgia Pacific continued disposal activities at the Willow Boulevard Landfill until 1975.

3

13.     Thousands of pounds of PCB-contaminated wastes have come to be located at the Willow Boulevard and A-Site landfills as a result of disposal activities by Geogia Pacific and its predecessors-in-interest.

14.     In 1990, EPA listed the Site on the National Priorities List, pursuant to 40 C.F.R. Part 300, Appendix B, and temporarily designated the State of Michigan as the enforcement lead.

15.     In 1990, the Michigan Department of Environmental Quality ("MDEQ") divided the Site into several operable units ("OUs"). The Landfill is considered part of OU2.

16.     OU2 includes the Willow Boulevard and A-Site landfills and the surrounding wetlands and floodplains.

17.     In 1990, pursuant to an agreement with MDEQ, several potentially responsible parties ("PRPs") at the Site, including Georgia Pacific, conducted a Remedial Investigation and Feasibility Study ("RI/FS") to characterize the nature and extent of contamination and the options for remediating OU2. The RI revealed that PCB-contaminated residuals from the Willow Boulevard and A-Site landfills had eroded and migrated into the soil and sediment of the adjacent areas, posing a risk to human health and the environment.

18.     Between 1999 and 2000, Georgia Pacific performed certain interim response actions at OU2 to abate the erosion of contaminated soil and sediment into areas adjacent to the landfills and nearby waters. EPA oversaw the performance of those response actions.

19.     In 2004, EPA assumed the enforcement lead for OU2.

20.     On September 27, 2006, EPA issued a Record of Decision ("ROD") which set forth the selected remedy for addressing the contamination at OU2. The ROD requires, among other things: (1) excavation of approximately 13,800 cubic yards of PCB-contaminated material

4

from areas adjacent to the Willow Boulevard and A-Site landfills and consolidation of that

material into the A-Site Landfill; (2) bank stabilization and erosion control measures to prevent

migration of PCBs into the Kalamazoo River; (3) construction of caps over the Willow

Boulevard and A-Site landfills; (4) long-term maintenance of the remedy; (5) long-term

monitoring of the groundwater beneath the remediated area; and (6) implementation of

institutional controls, including access restrictions to prevent exposure to PCB-contaminated

material.

## CERCLA LIABILITY

21.     CERCLA was enacted in 1980 to provide a comprehensive governmental

mechanism for abating releases and threatened releases of hazardous substances and other

pollutants and contaminants, and for funding the costs of such abatement and related

enforcement activities, which are known as "response" actions. 42 U.S.C. §§ 9604(a), 9601(25).

22.     Under Section 104(a)(1) of CERCLA, as amended:

> (1) Whenever (A) any hazardous substance is released or there is a substantial
> threat of such a release into the environment, or (B) there is a release or
> substantial threat of release into the environment of any pollutant or contaminant
> which may present an imminent and substantial danger to the public health or
> welfare, the President is authorized to act, consistent with the national
> contingency plan, to remove or arrange for the removal of, and provide for
> remedial action relating to such hazardous substance, pollutant, or contaminant at
> any time (including its removal from any contaminated natural resource), or take
> any other response measure consistent with the national contingency plan which
> the President deems necessary to protect the public health or welfare or the
> environment....

42 U.S.C. § 9604(a)(1).

23.     Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), provides:

> [W]hen the President determines that there may be an imminent and

5

substantial endangerment to the public health or welfare or the
environment because of an actual or threatened release of a hazardous
substance from a facility, he may require the Attorney General of the
United States to secure such relief as may be necessary to abate such
danger or threat, and the district court of the United States in the district in
which the threat occurs shall have jurisdiction to grant such relief as the
public interest and the equities of the case may require.

24.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides:

(a) Notwithstanding any other provision or rule of law, and subject only to the
defenses set forth in subsection (b) of this section –
(1) the owner and operator of ... a facility,
(2) any person who at the time of disposal of any hazardous substances owned or
operated any facility at which such hazardous substances were disposed of, ...
shall be liable for –

(A) all costs of removal or remedial action incurred by the United States
Government or a State or an Indian tribe not inconsistent with the national
contingency plan.

25.     OU2 is a "facility," within the meaning of Sections 101(9) and 107(a) of

CERCLA, 42 U.S.C. §§ 9601(9) and 9607(a).

26.     PCBs are hazardous substances within the meaning of Section 101(14) and (22) of

CERCLA, 42 U.S.C. §§ 9601(14) and (22).

27.     Hazardous substances were "disposed of" at OU2, within the meaning of Sections

101(14), 101(29) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14), 9601(29) and 9607(a).

28.     There have been and continue to be "releases" or "threatened releases" of

hazardous substances into the environment at and from OU2, within the meaning of Sections

101(8), 101(14), 101(22), 104(a), and 107(a) of CERCLA, 42 U.S.C. §§ 9601(8), 9601(14),

9601(22), 9604(a), and 9607(a).

29.     Defendant Georgia Pacific is a "person," within the meaning of Section 101(21)

6

of CERCLA, 42 U.S.C. § 9601(21).

30.    Defendant Georgia Pacific is the "owner and operator of a facility" within the
meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

31.    Defendant Georgia Pacific is a "person who at the time of disposal of any
hazardous substance owned or operated the facility at which such hazardous substances were
disposed of" within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

32.    Defendant Georgia Pacific is the successor-in-interest to the CERCLA liability of
Allied Paper, Inc. through the sale of the A-Site Landfill that occurred in 1975.

33.    Defendant Georgia Pacific is the successor-in-interest to the CERCLA liability of
the Kalamazoo Paper Company through the sale of the Willow Boulevard Landfill that occurred
in 1967.

COUNT I

34.    The allegations of the foregoing paragraphs are incorporated herein by reference.

35.    The President, through his delegate, the Regional Administrator of EPA Region 5,
has determined that there is or may be an imminent and substantial endangerment to the public
health or welfare or the environment because of a release or threatened release of a hazardous
substance at and from OU2.

36.    Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), authorizes the United States to
bring an action to secure such relief as may be necessary to abate the danger or threat at OU2.

37.    EPA has determined that the remedy selected in the September 27, 2006 ROD is
necessary to abate the danger or threat at OU2 in terms of source control and management of the
migration of contamination.

7

38.    Defendant Georgia Pacific is liable to undertake the remedial actions identified in the ROD, which EPA has determined are necessary to abate the danger or threat at OU2.

## COUNT II

39.    The allegations of the foregoing paragraphs are incorporated herein by reference.

40.    The United States has incurred and will continue to incur response costs, as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), and authorized by Section 104 of CERCLA, 42 U.S.C. § 9604, as a result of the release or threatened release of hazardous substances at OU2.

41.    The response costs were incurred and will be incurred by the United States in a manner not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

42.    Defendant Georgia Pacific is liable for response costs incurred and to be incurred by the United States in connection with OU2, pursuant to Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

43.    Defendant Georgia Pacific is liable for response costs incurred and to be incurred by the United States in connection with OU2, pursuant to Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

## COUNT III

44.    The allegations of the foregoing paragraphs are incorporated herein by reference.

45.    The United States is entitled to a declaratory judgment on liability for response costs at OU2, which will be binding on any subsequent action to recover further response costs or damages, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

8

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, the United States, prays that this Court:

A.    Order Defendant Georgia Pacific to perform the remedial action for OU2 selected by EPA in the Record of Decision dated September 26, 2007.

B.    Order Defendant Georgia Pacific to reimburse the United States for all response costs incurred by the United States with respect to OU2, including pre-judgment interest;

C.    Enter a declaratory judgment establishing Defendant Georgia Pacific's liability that will be binding on any subsequent action or actions to recover further response costs relating to OU2;

D.    Award the United States its costs and fees in this action; and

E.    Grant such other relief as the Court deems just and proper.

9

Respectfully submitted,

JOHN C. CRUDEN
Acting Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources
Division

RENITA Y. FORD
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources
Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Ben Franklin Station
Washington, D.C. 20044-7611
(202) 305-0232

DONALD DAVIS
United States Attorney
Western District of Michigan

W. FRANCESCA FERGUSON
Assistant U.S. Attorney
Office of the United States Attorney
Western District of Michigan
5th Floor, The Law Building
330 Ionia Ave.
Grand Rapids, MI 49503
(616) 456-2404

Date:   5/13/09

Of Counsel:
Nicole Wood-Chi
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 W. Jackson Blvd. C-14J
Chicago, IL 60604

10