IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA    :

    Plaintiff,    :

    v.    : CIVIL ACTION NO. 1-09-cv-429

Georgia-Pacific, LLC    : HON. PAUL L. MALONEY
    : Chief United States District Judge

    Defendant.    :

---

## CONSENT DECREE
## FOR THE DESIGN AND IMPLEMENTATION OF CERTAIN RESPONSE ACTIONS AT OPERABLE UNIT 2 OF THE

## ALLIED PAPER, INC./PORTAGE CREEK/KALAMAZOO RIVER SUPERFUND SITE.

## I    BACKGROUND

A.    The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.    The United States in its Complaint seeks, inter alia: (1) reimbursement of costs incurred by EPA for response actions at the Willow Boulevard/A-Site Landfill, Operable Unit 2 ("OU2") of the Allied Paper, Inc./Portage Creek/Kalamazoo River Superfund Site ("Site") in Kalamazoo Township, Michigan; and (2) performance of response work at OU2 consistent with the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.    In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Michigan (the "State") on July 29, 2007, of negotiations with potentially responsible parties regarding the implementation of the remedial design and remedial action for OU2, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

D.    In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the United States Department of the Interior ("DOI") and the National Oceanic and

Atmospheric Administration of the United States Department of Commerce ("NOAA") on July 29, 2007, of negotiations with potentially responsible parties regarding the release of hazardous substances at OU2 that may have resulted in injury to the natural resources under federal trusteeship and encouraged the trustees to participate in the negotiation of this Consent Decree.

E.    The Defendant that has entered into this Consent Decree ("Settling Defendant") does not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor does it acknowledge that the release or threatened release of hazardous substances at or from OU2 constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

F.    Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on August 30, 1990, 55 Fed. Reg. 35502.

G.    In response to a release or a substantial threat of a release of hazardous substances at or from OU2, Settling Defendant, or its predecessors in interest, commenced in 1993 a Remedial Investigation and Focused Feasibility Study ("RI/FFS") for OU2 pursuant to an Administrative Order on Consent entered into on December 28, 1990 between the State and certain potentially responsible parties for the Site.

H.    In a November 19, 2001 letter authored by the Michigan Department of Environmental Quality ("MDEQ"), the State disapproved the RI/FFS for OU2 and assumed its completion. The State completed the Remedial Investigation and the Focused Feasibility Study Reports for OU2 in November of 2004.

I.    In accordance with the Site-Specific Amendment to the Enforcement Agreement for State-Enforcement-Lead Sites in Michigan, signed by the MDEQ on January 9, 2002 and by EPA on February 15, 2002, EPA acquired the enforcement lead for OU2 upon the State's submission of the RI/FFS Reports to EPA on December 2, 2004.

J.    Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the proposed plan for remedial action on July 26, 2005, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting is available by request to the public as part of the administrative record upon which the Regional Administrator based the selection of the response action.

K.    The decision by EPA on the remedial action to be implemented at OU2 is embodied in a final Record of Decision ("ROD"), executed on September 27, 2006, on which the State has given its concurrence. The ROD includes a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA.

L.    Based on the information presently available to EPA, EPA believes that the Work, as defined herein, will be properly and promptly conducted by Settling Defendant if conducted in accordance with the requirements of this Consent Decree and its appendices.

M.    Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected by the ROD and the Work to be performed by Settling Defendant shall constitute a response action taken or ordered by the President.

N.    The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of OU2 and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## I. JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over Settling Defendant. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. Settling Defendant shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## II. PARTIES BOUND

2.    This Consent Decree applies to and is binding upon the United States and upon Settling Defendant and its successors and assigns. Any change in ownership or corporate status of Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Settling Defendant's responsibilities under this Consent Decree.

3.    Settling Defendant shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Defendant with respect to OU2 or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendant or its contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendant shall nonetheless be responsible for ensuring that its contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## III. DEFINITIONS

4.    Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are

used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXVIII). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Date of Lodging" shall mean the day on which this Consent Decree is lodged with the Court."DOI" shall mean the United States Department of the Interior and any successor departments or agencies of the United States.

"DOJ" shall mean the United States Department of Justice and any successor departments or agencies of the United States.

"Effective Date" shall be the effective date of this Consent Decree as provided in Section XXVI.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"EPA Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that EPA both incurred and paid at or in connection with OU2 through April 30, 2008, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date. Such costs do not include any costs incurred by DOJ in connection with OU2.

"Federal Trustees" shall mean DOI, acting through FWS, and NOAA.

"Future Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that EPAand DOJ incur in reviewing or developing plans, reports and other items pursuant to this Consent Decree verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VI (Remedy Review), VIII (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), and XIV (Emergency Response), and Paragraph 91 of Section XX (Work Takeover). Future Costs shall also include all Interim Response Costs, and all Interest on those EPA Past Response Costs Settling Defendant has agreed to reimburse under this Consent Decree that has accrued pursuant to 42 U.S.C. § 9607(a) during the period from April 30, 2008 to the date of entry of this Consent Decree. Future Costs shall not include costs incurred by DOJ on behalf of the Federal Trustees.

- 4 -

"FWS" shall mean the Fish and Wildlife Service of the United States Department of the Interior and any successor departments or agencies of the United States.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by EPA in connection with OU2 between April 30, 2007and the Effective Date, or (b) incurred by EPA prior to the Effective Date but paid after that date.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"MAG" shall mean the Michigan Attorney General and any successor departments or agencies of the State.

"MDEQ" shall mean the Michigan Department of Environmental Quality and any successor departments or agencies of the State.

"MDNR" shall mean the Michigan Department of Natural Resources and any successor departments or agencies of the State.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Natural Resource Trustees" or "Trustees" shall mean DOI, acting through FWS; NOAA; and the State, acting through co-trustees MAG, MDNR, and MDEQ.

"NOAA" shall mean the National Oceanic and Atmospheric Administration of the United States Department of Commerce and any successor departments or agencies of the United States.

"Operable Unit 2" or "OU2" shall mean the Willow Boulevard/A-Site Landfill, encompassing approximately 32 acres and consisting of two disposal areas and adjacent impacted areas, including the Willow Boulevard Drainageway; the Area South of the A-Site Berm, including former Olmstead Creek; the Area East of Davis Creek; and the AMW-3A Area. The Willow Boulevard/A-Site Landfill is one of four landfills associated with the Site, and is located southeast of the intersection of Business I-94 and Highway M-96 in Kalamazoo Township, Michigan, and depicted generally on a figure attached as Appendix D.

"Operation and Maintenance" or "O&M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to this Consent Decree and the Statement of Work ("SOW").

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

"Parties" shall mean the United States and Settling Defendant.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in Section 7.2 of the ROD and Section II of the SOW.

"Plaintiff" shall mean the United States.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to OU2 of the Site, signed on September 27, 2006, by the Region 5 Regional Administrator's delegate, the Director of Region 5's Superfund Division, and all attachments thereto. The ROD is attached as Appendix A.

"Remedial Action" shall mean those activities, except for Operation and Maintenance, to be undertaken by Settling Defendant to implement the ROD, in accordance with the SOW and the final Remedial Design and Remedial Action Work Plans and other plans approved by EPA.

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 12 of this Consent Decree and approved by EPA, and any amendments thereto.

"Remedial Design" shall mean those activities to be undertaken by Settling Defendant to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 11 of this Consent Decree and approved by EPA, and any amendments thereto.

"Remedial Work" shall mean the activities, including any Operation and Maintenance associated with the Remedial Action, to be undertaken by Settling Defendant pursuant to this Consent Decree to implement the ROD in accordance with the SOW and the final Remedial Design and Remedial Action Work Plans.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendant" shall mean Georgia-Pacific, LLC.

"Site" shall mean the Allied Paper, Inc./Portage Creek/Kalamazoo River Superfund Site, encompassing approximately 80 miles of the Kalamazoo River (from Morrow Lake Dam to Lake Michigan), including the river banks and formerly impounded adjacent floodplains and wetlands, as well as a 3-mile stretch of Portage Creek and four paper residual disposal areas, located in Kalamazoo and Allegan Counties, Michigan, and depicted generally on the map attached as Appendix D.

"State" shall mean the State of Michigan.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Design, Remedial Action, and Operation and Maintenance at OU2, as set forth in Appendix C to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by Settling Defendant to supervise and direct the implementation of the Work under this Consent Decree.

"United States" shall mean the United States of America.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous substance" under Section 20101(1)(t) of Part 201 of the Natural Resources and Environmental Protection Act, 1994 PA 451, as amended, MCL 324.20101(0) *et seq.*

"Work" shall mean all activities and obligations Settling Defendant is required to perform under this Consent Decree, except those required by Section XXV (Retention of Records).

## IV. GENERAL PROVISIONS

5.     Objectives of the Parties.   The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare and the environment at OU2 by the design and implementation of response actions at OU2 by Settling Defendant; to reimburse EPA's response costs for response actions at OU2; and to resolve EPA's claims against Settling Defendant as provided in this Consent Decree.

6.     Commitments by Settling Defendant.

a.     Settling Defendant shall finance and perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendant and approved by EPA pursuant to this Consent Decree.

b.     Settling Defendant shall apply the 0.33 ppm PCB remediation goal to the four areas identified in Section 7.2 and Figure 2 of the ROD.  In the event of future EPA decision-making, Settling Defendant reserves its right to evaluate appropriate wetland areas to address potential risks associated with a sediment-to-fish consumer exposure pathway at other operable units and areas of the Site.

c.     Settling Defendant shall also reimburse the United States for EPA Past Response Costs and for Future Costs.

7.     Compliance With Applicable Law.   All activities undertaken by Settling Defendant pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Settling Defendant must also comply with all applicable or relevant and appropriate requirements of all Federal and state

environmental laws as set forth in the ROD and the SOW. The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

        8.     Permits.

        a.     As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendant, shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

        b.     Settling Defendant may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

        c.     This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

        9.     Notice to Successors-in-Title.

        a.     With respect to any property owned or controlled by the Settling Defendant that is located within OU2, within 15 days after the entry of this Consent Decree, the Settling Defendant shall submit to EPA for review and approval a notice to be filed with the Kalamazoo County Clerk/Register Office, which shall provide notice to all successors-in-title that the property is part of OU2, that EPA selected a remedy for OU2 on September 27, 2006, and that the potentially responsible party has entered into a Consent Decree requiring implementation of the remedy. Such notice shall identify the United States District Court in which the Consent Decree was filed, the name and civil action number of this case, and the date the Consent Decree was entered by the Court. The Settling Defendant shall record the notice within 10 days of EPA's approval of the notice. The Settling Defendant shall provide EPA with a certified copy of the recorded notice within 10 days of recording such notice.

        b.     At least 30 days prior to the conveyance of any interest in property located within OU2 including, but not limited to, fee interests, leasehold interests, and mortgage interests, Settling Defendant shall give the grantee written notice of (i) this Consent Decree, (ii) any instrument by which an interest in real property has been conveyed that confers a right of access to OU2 (hereinafter referred to as "access easements") pursuant to Section VII (Access and Institutional Controls), and (iii) any instrument by which an interest in real property has been conveyed that confers a right to enforce restrictions on the use of such property (hereinafter referred to as "restrictive easements") pursuant to Section IX (Access and Institutional Controls). At least 30 days prior to such conveyance, Settling Defendant conveying the interest shall also give written notice to EPA and the State of the proposed conveyance, including the name and address of the grantee, and the date on which notice of the Consent Decree, access easements, and/or restrictive easements was given to the grantee.

        c.     In the event of any such conveyance, Settling Defendant's obligations under this Consent Decree, including, but not limited to, its obligation to provide or secure access

and institutional controls, as well as to abide by such institutional controls, pursuant to Section IX (Access and Institutional Controls) of this Consent Decree, shall continue to be met by the Settling Defendant. In no event shall the conveyance release or otherwise affect the liability of the Settling Defendant to comply with all provisions of this Consent Decree, absent the prior written consent of EPA. If the United States approves, the grantee may perform some or all of the Work under this Consent Decree.

## V. PERFORMANCE OF THE WORK BY SETTLING DEFENDANT

10.    Selection of Supervising Contractor.

a.    All aspects of the Work to be performed by Settling Defendant pursuant to Sections V (Performance of the Work by Settling Defendant), VI (Remedy Review), VII (Quality Assurance, Sampling and Data Analysis), and XIV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA. Within 10 days after the lodging of this Consent Decree, Settling Defendant shall notify EPA in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor. With respect to any contractor proposed to be Supervising Contractor, Settling Defendant shall demonstrate that the proposed contractor has a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan (QMP). The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA will issue a notice of disapproval or an authorization to proceed. If at any time thereafter, Settling Defendant proposes to change a Supervising Contractor, Settling Defendant shall give such notice to EPA and must obtain an authorization to proceed from EPA before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

b.    If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendant in writing. Settling Defendant shall submit to EPA a list of contractors, including the qualifications of each contractor, who would be acceptable to them within 30 days of receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendant may select any contractor from that list that is not disapproved and shall notify EPA of the name of the contractor selected within 21 days of EPA's authorization to proceed.

c.    If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents Settling Defendant from meeting one or more deadlines in a plan approved by EPA pursuant to this Consent Decree, Settling Defendant may seek relief under the provisions of Section XVII (Force Majeure) hereof.

11. Remedial Design.

a. Within 30 days after EPA's issuance of an authorization to proceed pursuant to Paragraph 10, Settling Defendant shall submit to EPA and the State, with copies to the Trustees, the Remedial Design Work Plan The Remedial Design Work Plan shall provide for design of the remedy set forth in the ROD, in accordance with the SOW and for achievement of the Performance Standards and other requirements set forth in the ROD, this Consent Decree and/or the SOW.

b. Upon its approval by EPA, after notice and an opportunity to comment by the State and the Natural Resource Trustees, the Remedial Design Work Plan shall be incorporated into and become enforceable under this Consent Decree. Within 30 days after EPA's issuance of an authorization to proceed , Settling Defendant shall submit to EPA and the State a Health and Safety Plan for field design activities, which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

c. The Remedial Design Work Plan shall include plans and schedules for implementation of all remedial design and pre-design tasks identified in the SOW, including, but not limited to, plans and schedules for the completion of: (1) a design sampling and analysis plan (including, but not limited to, a Remedial Design Quality Assurance Project Plan (RD QAPP) in accordance with section VII (Quality Assurance, Sampling and Data Analysis)); and (2) a Construction Quality Assurance Plan; and may also include: (1) a treatability study; (2) a Pre-design Work Plan; (3) a preliminary design submittal; (4) a pre-final design submittal; and (5) a final design submittal. In addition, the Remedial Design Work Plan shall include a schedule for completion of the Remedial Action Work Plan.

d. Upon approval of the Remedial Design Work Plan by EPA after notice and an opportunity to comment by the State and the Natural Resource Trustees and submittal of the Health and Safety Plan for all field activities to EPA and the State, Settling Defendant shall implement the Remedial Design Work Plan. Settling Defendant shall submit to EPA and the State all plans, submittals and other deliverables required under the approved Remedial Design Work Plan in accordance with the approved schedule for review and approval pursuant to Section X (EPA Approval of Plans and Other Submissions). Settling Defendant shall notify the Trustees of all plans, submittals, and other deliverables submitted to EPA and/or the State pursuant to this subparagraph and provide a copy of any such submission to the Trustees upon request. Unless otherwise directed by EPA, Settling Defendant shall not commence further Remedial Design activities at OU2 prior to approval of the Remedial Design Work Plan.

e. The preliminary design submittal shall include, at a minimum, the following: (1) design criteria; (2) results of treatability studies, if conducted; (3) results of additional field sampling and pre-design work; (4) a project delivery strategy; (5) preliminary plans, drawings and sketches; (6) required specifications in outline form; and (7) a preliminary construction schedule.

f. The pre-final/final design submittal shall include, at a minimum, the following: (1) final plans and specifications; (2) an Operation and Maintenance Plan; (3) a Construction Quality Assurance Project Plan ("CQAPP"); (4) a Field Sampling Plan (directed at measuring progress towards meeting Performance Standards); and (5) a Contingency Plan. The CQAPP, which shall detail the approach to quality assurance during construction activities at OU2, shall specify a quality assurance official ("QA Official"), independent of the Supervising Contractor, to conduct a quality assurance program during the construction phase of the project.

12. Remedial Action.

a. Within 30 days after the approval of the final design submittal, Settling Defendant shall submit to EPA, with copies to the Trustees and the State, the Remedial Action Work Plan. The Remedial Action Work Plan shall provide for construction and implementation of the remedy set forth in the ROD and achievement of the Performance Standards, in accordance with this Consent Decree, the ROD, the SOW, and the design plans and specifications developed in accordance with the Remedial Design Work Plan and approved by EPA. Upon its approval by EPA, the Remedial Action Work Plan shall be incorporated into and become enforceable under this Consent Decree. At the same time that Settling Defendant submits the Remedial Action Work Plan, Settling Defendant shall submit to EPA and the State a Health and Safety Plan for field activities required by the Remedial Action Work Plan which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

b. The Remedial Action Work Plan shall include, but not be limited to, the following: (1) a schedule for completion of the Remedial Action; (2) a method for selection of the contractor; (3) a schedule for developing and submitting other required Remedial Action plans; (4) groundwater monitoring plan; (5) methods for satisfying permitting requirements; (6) methodology for implementation of the Operation and Maintenance Plan; (7) methodology for implementation of the Contingency Plan; (8) a tentative formulation of the Remedial Action team; (9) a construction quality control plan (by constructor); and (10) procedures and plans for the decontamination of equipment and the disposal of contaminated materials. The Remedial Action Work Plan also shall include the methodology for implementation of the Construction Quality Assurance Plan and a schedule for implementation of all Remedial Action tasks identified in the final design submittal and shall identify the initial formulation of Settling Defendant's Remedial Action Project Team (including, but not limited to, the Supervising Contractor).

c. Upon approval of the Remedial Action Work Plan by EPA, after notice and an opportunity to comment by the State and Natural Resource Trustees, Settling Defendant shall implement the activities required under the Remedial Action Work Plan. Settling Defendant shall submit to EPA and the State all plans, submittals, or other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section X (EPA Approval of Plans and Other Submissions). Settling Defendant shall notify the Trustees of all plans, submittals, and other deliverables submitted to EPA and/or the State pursuant to this subparagraph and provide a copy of any such submission to the Trustees upon request. Unless otherwise directed by EPA, Settling Defendant shall not commence physical Remedial Action activities at OU2 prior to approval of the Remedial Action Work Plan.

13.    Settling Defendant shall continue to implement the Remedial Action and O&M until the Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree.

14.    Modification of the SOW or Related Work Plans.

a.    If EPA determines that modification to the work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, EPA may require that such modification be incorporated in the SOW and/or such work plans, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the ROD, as set forth in Appendix A ("Record of Decision for the Willow Boulevard/A-Site Landfill Operable Unit 2 dated September 27, 2006").

b.    If Settling Defendant objects to any modification determined by EPA to be necessary pursuant to this Paragraph, Settling Defendant may seek dispute resolution pursuant to Section XVIII (Dispute Resolution). The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

c.    Settling Defendant shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

d.    Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

15.    Settling Defendant acknowledges and agrees that nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

16.    a.    Settling Defendant shall, prior to any off-site shipment of Waste Material from OU2 to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material. However, this notification requirement shall not apply to any off-site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

(1)    Settling Defendant shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation. Settling Defendant shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

- 12 -

(2)    The identity of the receiving facility and state will be determined by Settling Defendant following the award of the contract for Remedial Action construction. Settling Defendant shall provide the information required by Paragraph 16.a as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

b.    Before shipping any hazardous substances, pollutants, or contaminants from OU2 to an off-site location, Settling Defendant shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. 300.440. Settling Defendant shall only send hazardous substances, pollutants, or contaminants from OU2 to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

## VI. REMEDY REVIEW

17.    Periodic Review. Settling Defendant shall conduct any studies and investigations as requested by EPA, in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA and any applicable regulations.

18.    EPA Selection of Further Response Actions. If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for OU2 in accordance with the requirements of CERCLA and the NCP.

19.    Opportunity To Comment. Settling Defendant and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

20.    Settling Defendant's Obligation To Perform Further Response Actions. If EPA determines that the remedial action is not protective of human health and the environment, Settling Defendant shall undertake such further response actions to the extent that the reopener conditions in Paragraph 87 or Paragraph 88 (United States' reservations of liability based on unknown conditions or new information) are satisfied. Settling Defendant may invoke the procedures set forth in Section XVIII (Dispute Resolution) to dispute (1) EPA's determination that the reopener conditions of Paragraph 87 or Paragraph 88 of Section XXI (Covenants Not To Sue by Plaintiff) are satisfied, (2) EPA's determination that the Remedial Action is not protective of human health and the environment, or (3) EPA's selection of the further response actions. Disputes pertaining to whether the Remedial Action is protective of human health and the environment or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 70 in Section XVIII (Dispute Resolution).

21.    Submissions of Plans. If Settling Defendant is required to perform further response actions pursuant to Paragraph 20, Settling Defendant shall submit a plan for such work to EPA for approval in accordance with the procedures set forth in Section V (Performance of

the Work by Settling Defendant) and shall implement the plan approved by EPA in accordance with the provisions of this Decree.

## VII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

22.    Settling Defendant shall use quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001) "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998), and subsequent amendments to such guidelines upon notification by EPA to Settling Defendant of such amendment. Amended guidelines shall apply only to procedures conducted after such notification. Prior to the commencement of any monitoring project under this Consent Decree, Settling Defendant shall submit to EPA for approval, after a reasonable opportunity for review and comment by the State, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP and applicable guidance documents. If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Decree. Settling Defendant shall ensure that EPA personnel and its authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendant in implementing this Consent Decree. In addition, Settling Defendant shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring. Settling Defendant shall ensure that the laboratories Settling Defendant utilizes for the analysis of samples taken pursuant to this Decree perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Decree; however, upon approval by EPA, after opportunity for review and comment by the State, Settling Defendant may use other analytical methods which are as stringent as or more stringent than the CLP-approved methods. Settling Defendant shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program. Settling Defendant shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program (NELAP) as meeting the Quality System requirements. Settling Defendant shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in the QAPP approved by EPA.

23.    Upon request, Settling Defendant shall allow split or duplicate samples to be taken by EPA or its authorized representatives. Settling Defendant shall notify EPA not less than 21 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA shall have the right to take any additional samples that EPA deem necessary. Upon request, EPA shall allow Settling Defendant to take split or duplicate samples of any

- 14 -

samples it takes as part of the Plaintiff's oversight of Settling Defendant's implementation of the Work.

24.    Settling Defendant shall submit to EPA and to the State two copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendant with respect to OU2 and/or the implementation of this Consent Decree unless EPA agrees otherwise. Upon written approval by EPA's Project Coordinator, Settling Defendant may electronically submit results of sampling and other data.

25.    Notwithstanding any provision of this Consent Decree, the United States hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

## VIII. Access and Institutional Controls

26.    If OU2, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by Settling Defendant, Settling Defendant shall:

a.    commencing on the date of lodging of this Consent Decree, provide the United States, the State and their representatives, including EPA, MDEQ and their respective contractors, with access at all reasonable times to OU2, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

(1)    Monitoring the Work;

(2)    Verifying any data or information submitted to the United States;

(3)    Conducting investigations relating to contamination at or near OU2;

(4)    Obtaining samples;

(5)    Assessing the need for, planning, or implementing additional response actions at or near OU2;

(6)    Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

(7)    Implementing the Work pursuant to the conditions set forth in Paragraph 91 of this Consent Decree;

(8)    Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or its agents, consistent with Section XXIII (Access to Information);

- 15 -

(9)     Assessing Settling Defendant's compliance with this Consent Decree; and

(10)    Determining whether OU2 or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree.

b.      commencing on the date of lodging of this Consent Decree, provide the Trustees and their respective contractors, with access at all reasonable times to OU2, or such other property, for the purpose of conducting the following activities:

(1)     Observing the Work;

(2)     Verifying any data or information submitted to the United States;

(3)     Conducting investigations relating to contamination at or near OU2;

(4)     Obtaining samples;

(5)     Assessing the extent to which the Work has resulted in the Natural Resources at OU2 returning to the condition they would have been in had the release of hazardous substances not occurred.

c.      commencing on the date of lodging of this Consent Decree, refrain from using OU2, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree; and

d.      execute and record in the Kalamazoo County Clerk/Register Office a declaration of restrictive covenant and environmental easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 26.a of this Consent Decree, and (ii) grants the right to enforce land/water use restrictions or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Settling Defendant shall grant the access rights to MDEQ, EPA as a third-party beneficiary, and the designated representatives of EPA and MDEQ. Settling Defendant shall grant the rights to enforce the land/water use restrictions to (i) the United States, on behalf of EPA, as a third-party beneficiary, and its representatives, (ii) MDEQ and its representatives, and/or (iii) other appropriate grantees. Settling Defendant shall, within 45 days of entry of this Consent Decree, submit to EPA for review and approval with respect to such property owned by the Owner Settling Defendant:

(1)     A draft declaration of restrictive covenant and environmental easement, in substantially the form attached hereto as Appendix E, that is enforceable under the laws of the State of Michigan, and

- 16 -

(2)     a current title insurance commitment or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Owner Settling Defendant is unable to obtain release or subordination of such prior liens or encumbrances).

Within 45 days of EPA's approval and acceptance of the easement and the title evidence, Settling Defendant shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, record the declaration of restrictive covenant and environmental easement with the Kalamazoo County Clerk/Register Office. Within 30 days of recording the declaration of restrictive covenant and environmental easement, Settling Defendant shall provide EPA with a final title insurance commitment, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement, certified by the County Clerk/Register Office, showing the clerk's recording stamps. If the easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 3111.

27.     If OU2, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than Settling Defendant, Settling Defendant shall use best efforts to secure from such person(s):

a.     an agreement to provide access thereto for Settling Defendant, as well as for the United States on behalf of EPA, and the State, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 26.a of this Consent Decree;

b.     an agreement to provide access thereto for the Trustees and their representatives (including contractors), for the purpose of conducting those activities listed in Paragraph 26.b of this Consent Decree;

c.     an agreement, enforceable by Settling Defendant and the United States, to refrain from using OU2, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree;

d.     the execution and recordation in the Kalamazoo County Clerk/Register Office, of a declaration of restrictive covenant and environmental easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 26.a of this Consent Decree, and (ii) grants the right to enforce land/water use restrictions or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. The access rights shall be granted to MDEQ, EPA as a third-party beneficiary, and the designated representatives of EPA and MDEQ. The rights to enforce land/water use restrictions shall be granted to (i) the United States, on behalf of EPA, as a third-party beneficiary, and its

representatives, (ii) MDEQ and its representatives, and/or (iii) other appropriate grantees. The agreements referenced in Paragraphs 27.a and 27.b of this Consent Decree may be incorporated into the declaration of restrictive covenant and environmental easement described in this Paragraph 27.c. Within 45 days of entry of this Consent Decree, Settling Defendant shall submit to EPA for review and approval with respect to such property:

        (1)    A draft declaration of restrictive covenant and environmental easement, in substantially the form attached hereto as Appendix E, that is enforceable under the laws of the State of Michigan, and

        (2)    a current title insurance commitment, or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Settling Defendant is unable to obtain release or subordination of such prior liens or encumbrances).

Within 45 days of EPA's approval and acceptance of the easement and the title evidence, Settling Defendant shall obtain from the third party an executed declaration of restrictive covenant and environmental easement and update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, the declaration of restrictive covenant and environmental easement shall be recorded with the Kalamazoo County Clerk/Register Office. Within 30 days of the recording of the declaration of restrictive covenant and environmental easement, Settling Defendant shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement, certified by the County Clerk/Register Office, showing the clerk's recording stamps. If easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 3111.

        28.    For purposes of Paragraphs 26 and 27 of this Consent Decree, "best efforts" includes the payment of reasonable sums of money in consideration of access, access easements, land/water use restrictions, restrictive declarations and easements, and/or an agreement to release or subordinate a prior lien or encumbrance. If (a) any access or land/water use restriction agreements required by Paragraphs 27.a or 27.b of this Consent Decree are not obtained within 45 days of the date of entry of this Consent Decree, (b) or any access easements or restrictive easements required by Paragraph 27.c of this Consent Decree are not submitted to EPA in draft form within 45 days of the date of entry of this Consent Decree, or (c) Settling Defendant is unable to obtain an agreement pursuant to Paragraph 26.c.(2) or Paragraph 27.c.(2) from the holder of a prior lien or encumbrance to release or subordinate such lien or encumbrance to the easement being created pursuant to this consent decree within 45 days of the date of entry of this Consent Decree, Settling Defendant shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Defendant has taken to attempt to comply with Paragraph 26 or 27 of this Consent Decree. The United States may, as it deems appropriate, assist Settling Defendant in obtaining access or land/water use restrictions, either in the form of contractual agreements or in the form of easements running with the land, or in obtaining the release or subordination of a prior lien or encumbrance. Settling Defendant shall

- 18 -

reimburse the United States in accordance with the procedures in Section XV (Payments), for all costs incurred, directly or indirectly, by the United States in obtaining such access, land/water use restrictions, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

29.     If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendant shall cooperate with EPA's efforts to secure such governmental controls.

30.     Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## IX. REPORTING REQUIREMENTS

31.     In addition to any other requirement of this Consent Decree, Settling Defendant shall submit three copies to EPA and the State and one copy to each Trustee of written monthly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendant or its contractors or agents in the previous month; (c) identify all work plans, plans and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next six to twelve week period and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) describe any problems that were encountered during the previous month, including but not limited to, problems with construction activities required under this Decree; (g) include a description of any corrective actions or modifications to the work plans or other schedules that Settling Defendant has proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the next six weeks. Settling Defendant shall submit these progress reports to EPA, the Trustees, and the State by the fifteenth day of every month following the lodging of this Consent Decree until EPA notifies Settling Defendant pursuant to Paragraph 53.b of Section XIII (Certification of Completion). If requested by EPA, Settling Defendant shall also provide briefings for EPA, the Trustees, and the State to discuss the progress of the Work. Settling Defendant may request a decrease in the frequency and scope of the progress reports from EPA's Project Coordinator at appropriate points in the Work. Granting a decrease in the frequency or scope of the progress reports shall be solely within EPA's discretion and not subject to dispute resolution under Section XVIII.

- 19 -

32. Settling Defendant shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

33. Upon the occurrence of any event during performance of the Work that Settling Defendant is required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-know Act (EPCRA), Settling Defendant shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Branch, Region 5, United States Environmental Protection Agency. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

34. Within 20 days of the onset of such an event, Settling Defendant shall furnish to Plaintiff a written report, signed by Settling Defendant's Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within 30 days of the conclusion of such an event, Settling Defendant shall submit a report setting forth all actions taken in response thereto.

35. Settling Defendant shall submit three copies of all plans, reports, and data required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans. Settling Defendant shall simultaneously submit two copies of all such plans, reports and data to the State. Upon request by EPA Settling Defendant shall submit in electronic form all portions of any report or other deliverable Settling Defendant is required to submit pursuant to the provisions of this Consent Decree. Settling Defendant shall notify the Trustees of all plans, submittals, and other deliverables submitted to EPA and/or the State pursuant to this subparagraph and provide a copy of any such submission to each Trustee upon request.

36. All reports and other documents submitted by Settling Defendant to EPA (other than the monthly progress reports referred to above) which purport to document Settling Defendant's compliance with the terms of this Consent Decree shall be signed by an authorized representative of Settling Defendant.

## X. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

37. After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the Natural Resource Trustees and the State, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that Settling Defendant modify the submission; or (e) any combination of the above. However, EPA shall not modify a submission without first providing Settling Defendant at least one notice of deficiency and an opportunity to cure within 30 days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material

- 20 -

defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

38.     In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 37(a), (b), or (c), Settling Defendant shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to its right to invoke the Dispute Resolution procedures set forth in Section XVIII (Dispute Resolution) with respect to the modifications or conditions made by EPA. In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 37(c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

39.     Resubmission of Plans.

a.     Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 37(d), Settling Defendant shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve Settling Defendant of any liability for stipulated penalties under Section XX (Stipulated Penalties).

b.     Upon receipt of a notice of disapproval pursuant to Paragraph 37(d), Settling Defendant shall, within 30 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval. Any stipulated penalties applicable to the submission, as provided in Section XX (Stipulated Penalties), shall accrue during the 30-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 40 and 41.

40.     In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require Settling Defendant to correct the deficiencies, in accordance with the preceding Paragraphs. EPA also retains the right to modify or develop the plan, report or other item. Settling Defendant shall implement any such plan, report, or item as modified or developed by EPA, subject only to its right to invoke the procedures set forth in Section XVIII (Dispute Resolution).

41.     If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendant shall be deemed to have failed to submit such plan, report, or item timely and adequately unless Settling Defendant invokes the dispute resolution procedures set forth in Section XVIII (Dispute Resolution) and EPA's action is overturned pursuant to that Section. The provisions of Section XVIII (Dispute Resolution) and Section XIX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XIX.

42.     All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent

- 21 -

Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XI. PROJECT COORDINATORS

43. Within 20 days of lodging this Consent Decree, Settling Defendant and EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least 5 working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. Settling Defendant's Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. Settling Defendant's Project Coordinator shall not be an attorney for Settling Defendant in this matter. He or she may assign other representatives, including other contractors, to serve as an OU2 representative for oversight of performance of daily operations during remedial activities.

44. EPA may designate other representatives, including, but not limited to, EPA,Trustee, or State employees, and federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the National Contingency Plan, 40 C.F.R. Part 300. In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at OU2 constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

45. EPA's Project Coordinator and Settling Defendant's Project Coordinator will meet in person or via conference call, at a minimum, on a monthly basis, unless EPA's Project Coordinator agrees to meet on a greater or less frequent basis.

## XII. PERFORMANCE GUARANTEE

46. In order to ensure the full and final completion of the Work, Settling Defendant shall establish and maintain a Performance Guarantee for the benefit of EPA in the total amount of $12.7 million (hereinafter "Estimated Cost of the Work") in one or more of the following forms, which must be satisfactory in form and substance to EPA:

a. A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on Federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b. One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (i) that has the authority to issue letters

of credit and (ii) whose letter-of-credit operations are regulated and examined by a U.S. Federal or State agency;

c.    A trust fund established for the benefit of EPA that is administered by a trustee (i) that has the authority to act as a trustee and (ii) whose trust operations are regulated and examined by a U.S. Federal or State agency;

d.    A policy of insurance that (i) provides EPA with acceptable rights as a beneficiary thereof; and (ii) is issued by an insurance carrier (a) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (b) whose insurance operations are regulated and examined by a State agency;

e.    A demonstration by Settling Defendant that it meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work, provided that all other requirements of 40 C.F.R. § 264.143(f) are satisfied; or

f.    A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (i) a direct or indirect parent company of a Settling Defendant, or (ii) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with Settling Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test requirements of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work that it proposes to guarantee hereunder.

47.    Settling Defendant has selected, and EPA has approved, as an initial Performance Guarantee, an environmental Surety Bond in the forms attached hereto jointly as Appendix F. Within ten days after the Effective Date, Settling Defendant shall execute or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee legally binding in a form substantially identical to the documents attached hereto as Appendix F, and such Performance Guarantee shall thereupon be fully effective. Within thirty days of entry of this Consent Decree, Settling Defendant shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee legally binding to the EPA Regional Financial Management Officer in accordance with Section XXV (Notices and Submissions) of this Consent Decree, with a copy to Cyprian O. Ejiasa, Regional Comptroller, U.S. EPA, Region 5, (MF-10J), 77 W. Jackson Blvd., Chicago, IL 60604-3590, and to the United States and EPA as specified in Section XXVI.

48.    If at any time during the effective period of this Consent Decree, Settling Defendant provides a Performance Guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 46.e or Paragraph 46.f above, Settling Defendant shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f), 40 C.F.R. § 264.151(f), and 40 C.F.R. § 264.151(h)(1) relating to these methods unless otherwise provided in this Consent Decree, including but not limited to (i) the initial submission of required financial reports and statements from the relevant entity's chief financial officer and independent certified public accountant; (ii) the annual re-submission of such reports and statements within ninety days after the close of each such entity's fiscal year; and (iii) the notification of EPA within ninety days after the close of any fiscal year in which such entity no longer satisfies the

financial test requirements set forth at 40 C.F.R. § 264.143(f)(1). For purposes of the Performance Guarantee methods specified in this Section XII, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to refer to the Work required under this Consent Decree, and the terms "current closure cost estimate" "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to refer to the Estimated Cost of the Work.

49.     In the event that EPA determines at any time that a Performance Guarantee provided by Settling Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that Settling Defendant becomes aware of information indicating that a Performance Guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, Settling Defendant, within 45 days of receipt of notice of EPA's determination or, as the case may be, within 45 days of Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of Performance Guarantee listed in Paragraph 46 of this Consent Decree that satisfies all requirements set forth in this Section XII. In seeking approval for a revised or alternative form of Performance Guarantee, Settling Defendant shall follow the procedures set forth in Paragraph 51.b.(2) of this Consent Decree. Settling Defendant's inability to post a Performance Guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Defendant to complete the Work in strict accordance with the terms hereof.

50.     The commencement of any Work Takeover pursuant to Paragraph 91 of this Consent Decree shall trigger EPA's right to receive the benefit of any Performance Guarantee(s) provided pursuant to Paragraph 46(a), (b), (c), (d), or (f), and at such time EPA shall have immediate access to resources guaranteed under any such Performance Guarantee(s), whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover. If for any reason EPA is unable to promptly secure the resources guaranteed under any such Performance Guarantee(s), whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or in the event that the Performance Guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Paragraph 46(e), Settling Defendant shall immediately upon written demand from EPA deposit into an account specified by EPA, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the · estimated cost of the remaining Work to be performed as of such date, as determined by EPA.

51.     Modification of the Amount and/or Form of Performance Guarantee

a.     Reduction of Amount of Performance Guarantee. If Settling Defendant believes that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 46 above, Settling Defendant may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the Performance Guarantee provided pursuant to this Section so that the amount of the Performance Guarantee is equal to the estimated cost of the remaining

- 24 -

Work to be performed. Settling Defendant shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the cost of the remaining Work to be performed and the basis upon which such cost was calculated. In seeking approval for a revised or alternative form of Performance Guarantee, Settling Defendant shall follow the procedures set forth in Paragraph 51.b.(2) of this Consent Decree. If EPA decides to accept such a proposal, EPA shall notify the petitioning Settling Defendant of such decision in writing. After receiving EPA's written acceptance, Settling Defendant may reduce the amount of the Performance Guarantee in accordance with and to the extent permitted by such written acceptance. In the event of a dispute, Settling Defendant may reduce the amount of the Performance Guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute. No change to the form or terms of any Performance Guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 49 or 51.b of this Consent Decree.

b.      Change of Form of Performance Guarantee

(1)      If, after entry of this Consent Decree, Settling Defendant desires to change the form or terms of any Performance Guarantee(s) provided pursuant to this Section, Settling Defendant may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form of the Performance Guarantee provided hereunder. The submission of such proposed revised or alternative form of Performance Guarantee shall be as provided in Paragraph 51.b.(2) of this Consent Decree. Any decision made by EPA on a petition submitted under this subparagraph b(1) shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Settling Defendant pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

(2)      Settling Defendant shall submit a written proposal for a revised or alternative form of Performance Guarantee to EPA which shall specify, at a minimum, the estimated cost of the remaining Work to be performed, the basis upon which such cost was calculated, and the proposed revised form of Performance Guarantee, including all proposed instruments or other documents required in order to make the proposed Performance Guarantee legally binding. The proposed revised or alternative form of Performance Guarantee must satisfy all requirements set forth or incorporated by reference in this Section. Settling Defendant shall submit such proposed revised or alternative form of Performance Guarantee to the EPA Regional Financial Management Officer in accordance with Section XXV (Notices and Submissions) of this Consent Decree[, with a copy to Cyprian O. Ejiasa, Regional Comptroller, U.S. EPA, Region 5, (MF-10J), 77. W. Jackson Blvd., Chicago, IL 60604-3590. EPA shall notify Settling Defendant in writing of its decision to accept or reject a revised or alternative Performance Guarantee submitted pursuant to this subparagraph. Within 20 days after receiving a written decision approving the proposed revised or alternative Performance Guarantee, Settling Defendant shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantees legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such Performance Guarantee(s) shall thereupon be fully effective. Settling

Defendant shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding to the EPA Regional Financial Management Officer within thirty days of receiving a written decision approving the proposed revised or alternative Performance Guarantee in accordance with Section XXV (Notices and Submissions) of this Consent Decree, with a copy to Cyprian O. Ejiasa, Regional Comptroller, U.S. EPA, Region 5, (W-10J), 77. W. Jackson Blvd., Chicago, IL 60604-3590, and to the United States and EPA as specified in Section XXV.

       c.     <u>Release of Performance Guarantee</u>. When Settling Defendant receives written notice from EPA that the Work has been fully and finally completed in accordance with the terms of this Consent Decree, Settling Defendant may thereafter release, cancel, or discontinue the Performance Guarantee(s) provided pursuant to this Section. EPA shall release the original Performance Guarantee instrument to Settling Defendant within thirty days of Settling Defendant's receipt of the notice from EPA specified in the previous sentence. Settling Defendant shall not release, cancel, or discontinue any Performance Guarantee provided pursuant to this Section except as provided in this Subparagraph. In the event of a dispute, Settling Defendant may release, cancel, or discontinue the Performance Guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute.

XIII. CERTIFICATION OF COMPLETION

52.   <u>Completion of the Remedial Action</u>.

       a.     Within 90 days after Settling Defendant concludes that the Remedial Action has been fully performed and the Performance Standards have been attained, Settling Defendant shall schedule and conduct a pre-certification inspection to be attended by Settling Defendant, EPA, the Trustees, and the State. If, after the pre-certification inspection, Settling Defendant still believes that the Remedial Action has been fully performed and the Performance Standards have been attained, it shall submit a written report requesting certification by EPA for approval, with copies to the Trustees and the State, pursuant to Section X (EPA Approval of Plans and Other Submissions) within 30 days of the inspection. The report shall include the following items, if determined to be necessary by EPA:

- Brief description of how outstanding items noted in the Pre-final Inspection were resolved;
- Explanation of modifications made during the RA to the approved RD and RA Work Plans and why these changes were made;
- As-built drawings; and
- Synopsis of the work defined in the SOW and a demonstration in accordance with the Performance Standards Verification Plan that Performance Standards have been achieved;
- Certification that the RA has been completed in full satisfaction of the requirements of the Consent Decree and this SOW; and
- if O&M has commenced, description of how Settling Defendant will implement any remaining part of the U.S. EPA approved O&M Plan.

- a summary of the respective mitigation objectives and the actions implemented to meet those objectives;
- a certification that all work plans, specifications, and schedules have been implemented and completed in accordance with the respective plans approved by EPA;
- as-built plan drawings, including vegetation established and erosion controls remaining in place;
- a discussion of difficulties encountered during project implementation that may alter or reduce the effectiveness of the respective mitigation and any implemented or planned corrective actions; and
- a discussion of any necessary modifications to the operation and maintenance procedures as approved.

In the report, a registered professional engineer and Settling Defendant's Project Coordinator shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree. The written report shall identify any performance standards that have not been met as of the date of the report, and include as-built drawings signed and stamped by a professional engineer. The report shall contain the following statement, signed by a responsible corporate official of Settling Defendant or Settling Defendant's Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after notice and an opportunity to comment by the State and Trustees, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Settling Defendant in writing of the activities that must be undertaken by Settling Defendant pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards, provided, however, that EPA may only require Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as set forth in Appendix A, (Record of Decision for the Willow Boulevard/A-Site Landfill (OU2) dated September 27, 2006). EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Settling Defendant to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to its right to invoke the dispute resolution procedures set forth in Section XVIII (Dispute Resolution).

b.     If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion and after notice and an opportunity to comment by the State and the

Trustees, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to Settling Defendant. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants Not to Sue by Plaintiff). Certification of Completion of the Remedial Action shall not affect Settling Defendant's obligations under this Consent Decree.

53. Completion of the Work.

a. Within 90 days after Settling Defendant concludes that all phases of the Work (including O & M), have been fully performed, Settling Defendant shall schedule and conduct a pre-certification inspection to be attended by Settling Defendant and EPA (with notice and an opportunity to attend to the Trustees and State. If, after the pre-certification inspection, Settling Defendant still believes that the Work has been fully performed, Settling Defendant shall submit a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the following statement, signed by a responsible corporate official of Settling Defendant or Settling Defendant's Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify
> that the information contained in or accompanying this submission
> is true, accurate and complete. I am aware that there are
> significant penalties for submitting false information, including the
> possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after notice and an opportunity to comment by the State and Trustees, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendant in writing of the activities that must be undertaken by Settling Defendant pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 14.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Settling Defendant to submit a schedule to EPA for approval pursuant to Section X (EPA Approval of Plans and Other Submissions). Settling Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to its right to invoke the dispute resolution procedures set forth in Section XVIII (Dispute Resolution).

b. If EPA concludes, based on the initial or any subsequent request for Certification of Completion by Settling Defendant and after notice and an opportunity to comment by the State and Trustees, that the Work has been performed in accordance with this Consent Decree, EPA will so notify Settling Defendant in writing.

## XIV. EMERGENCY RESPONSE

54. In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from OU2 that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendant shall, subject to Paragraph 55, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator. If neither of these persons is available, Settling Defendant shall notify the EPA Emergency Response Branch, Region 5. Settling Defendant shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that Settling Defendant fails to take appropriate response action as required by this Section, and EPA takes such action instead, Settling Defendant shall reimburse EPA for all costs of the response action not inconsistent with the NCP pursuant to Section XV (Payments).

55. Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States to a) take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from OU2, or b) direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from OU2, subject to Section XX (Covenants Not to Sue by Plaintiff).

## XV. PAYMENTS

56. Payments for Past Response Costs.

a. Within 30 days of the Effective Date, Settling Defendant shall pay to EPA $225,509.91 for EPA Past Response Costs. Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures, referencing USAO File Number 2009V00245, EPA Site/Spill ID Number 059B, the "Willow Boulevard/A-Site Landfill, Operable Unit 2," and DOJ Case Number 90-11-2-07912. Payment shall be made in accordance with instructions provided to Settling Defendant by the Financial Litigation Unit of the United States Attorney's Office for the Western District of Michigan (Southern Division) following lodging of the Consent Decree. Any payments received by the Department of Justice after 4:00 p.m. (Eastern Time) will be credited on the next business day.

b. At the time of payment, Settling Defendant shall send notice that payment has been made to the United States, to EPA and to the Regional Financial Management Officer, in accordance with Section XXV (Notices and Submissions).

c. The total amount to be paid by Settling Defendant pursuant to Subparagraph 56.a shall be deposited in the Allied Paper, Inc./Portage Creek/Kalamazoo River Special Account within the EPA Hazardous Substance Superfund to be retained and used to

- 29 -

conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

57.    Payments for Future Costs.

a.    Settling Defendant shall pay to EPA all Future Costs not inconsistent with the National Contingency Plan. On a periodic basis the United States will send Settling Defendant a bill requiring payment that includes an Itemized Cost Summary, which includes direct and indirect costs incurred by EPA, including costs of its contractors, and a DOJ-prepared cost summary which reflects costs incurred by DOJ and its contractors, if any. Settling Defendant shall make all payments within 45 days of Settling Defendant's receipt of each bill requiring payment, except as otherwise provided in Paragraph 58 according to the following procedures.

(1)    If the payment amount demanded in the bill is more than $10,000, payment shall be made to U.S. EPA by Electronics Funds Transfer ("EFT") in accordance with current EFT procedures to be provided to Settling Defendant by U.S. EPA Region 5. Payment shall be accompanied by a statement identifying the name and address of the Setttling Defendant, the Site name, U.S. EPA Region 5, the Site/Spill ID Number 059B, the and the Court docket number for this action.

(2)    If the amount demanded in the bill is $10,000 or less, Settling Defendant may in lieu of the procedures in subparagraph 57.a(i) make all payments required by this Paragraph by a certified or cashier's check or checks made payable to "EPA Hazardous Substance Superfund," referencing the name and address of the party making the payment, EPA Site/Spill ID Number 059B, the "Willow Boulevard/A-Site Landfill, Operable Unit 2," and DOJ Case Number 90-11-2-07912. Settling Defendant shall send the check(s) to:

> U.S. Environmental Protection Agency, Region 5
> Superfund Program Accounting & Analysis Section
> P.O. Box 371531
> Pittsburgh, PA 15251-7531

b.    At the time of payment, Settling Defendant shall send notice that payment has been made to the United States, to EPA and to the Regional Financial Management Officer, in accordance with Section XXVI (Notices and Submissions).

c.    All payments required by Subparagraph 57.a shall be deposited in the Allied Paper, Inc./Portage Creek/Kalamazoo River Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

58.    Settling Defendant may contest payment of any Future Costs required under Paragraph 57 if they determine that the United States has made an accounting error or if they allege that a cost item that is included represents costs that are inconsistent with the NCP. Such objection shall be made in writing within 45 days of receipt of the bill and must be sent to the United States pursuant to Section XXV (Notices and Submissions). Any such objection shall specifically identify the contested Future Costs and the basis for objection. In the event of an objection, Settling Defendant shall within the 45-day period pay all uncontested Future Costs to

- 30 -

the United States in the manner described in Paragraph 57. Simultaneously, Settling Defendant shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of Michigan and remit to that escrow account funds equivalent to the amount of the contested Future Costs. Settling Defendant shall send to the United States, as provided in Section XXV (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, Settling Defendant shall initiate the Dispute Resolution procedures in Section XVIII (Dispute Resolution). If the United States prevails in the dispute, within 10 days of the resolution of the dispute, Settling Defendant shall pay the sums due (with accrued interest) to the United States in the manner described in Paragraph 57. If Settling Defendant prevails concerning any aspect of the contested costs, Settling Defendant shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States in the manner described in Paragraph 57; Settling Defendant shall be disbursed any balance of the escrow account. The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XVIII (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding Settling Defendant's obligation to reimburse the United States for its Future Costs.

59.    In the event that the payments required by Subparagraph 56.a are not made within 30 days of the Effective Date or the payments required by Paragraph 57 are not made within 45 days of Settling Defendant's receipt of the bill, Settling Defendant shall pay Interest on the unpaid balance. The Interest to be paid on Past Response Costs under this Paragraph shall begin to accrue on the Effective Date. The Interest on Future Costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of Settling Defendant's payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Defendant's failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 73. Settling Defendant shall make all payments required by this Paragraph in the manner described in Paragraph 57.

## XVI. INDEMNIFICATION AND INSURANCE

60.    Settling Defendant's Indemnification of the United States.

a.    The United States does not assume any liability by entering into this agreement or by virtue of any designation of Settling Defendant as EPA's authorized representative under Section 104(e) of CERCLA. Settling Defendant shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendant as EPA's authorized representative under Section 104(e) of CERCLA. Further, Settling Defendant agrees to pay the United States all

- 31 -

costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree. The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Defendant in carrying out activities pursuant to this Consent Decree. Neither Settling Defendant nor any of its contractors shall be considered an agent of the United States.

    b. The United States shall give Settling Defendant notice of any claim for which the United States plans to seek indemnification pursuant to Paragraph 60, and shall consult with Settling Defendant prior to settling such claim.

    61. Settling Defendant waives all claims against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work on or relating to OU2, including, but not limited to, claims on account of construction delays. In addition, Settling Defendant shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work on or relating to OU2, including, but not limited to, claims on account of construction delays.

    62. No later than 15 days before commencing any on-site Work, Settling Defendant shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Remedial Action pursuant to Subparagraph 52.b of Section XIII (Certification of Completion) comprehensive general liability insurance with limits of 2.5 million dollars, combined single limit, and automobile liability insurance with limits of 2.5 million dollars, combined single limit, naming the United States as an additional insured with respect to all liability arising out of the activities performed by or on behalf of Settling Defendant pursuant to this Consent Decree. In addition, for the duration of this Consent Decree, Settling Defendant shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendant in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Defendant shall provide to EPA certificates of such insurance and a copy of each insurance policy. Settling Defendant shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date, unless such policies have not changed from the the prior year and Settling Defendant receives confirmation from EPA that the existing copies of policies on file with EPA will be maintained until the next anniversary of the Effective Date. If Settling Defendant demonstrates by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendant need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVII. Force Majeure

63.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Settling Defendant, of any entity controlled by Settling Defendant, or of Settling Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendant's best efforts to fulfill the obligation. The requirement that Settling Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

64.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Settling Defendant shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Superfund Division, EPA Region 5, within 1 day of when Settling Defendant first knew that the event might cause a delay. Within 5 days thereafter, Settling Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Defendant's rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of Settling Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Settling Defendant shall include with any notice all available documentation supporting its claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Settling Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendant shall be deemed to know of any circumstance of which Settling Defendant, any entity controlled by Settling Defendant, or Settling Defendant's contractors knew or should have known.

65.    If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Settling Defendant in writing of its decision. If EPA agrees that the delay is attributable to a force majeure event, EPA will notify Settling Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

66.    If Settling Defendant elects to invoke the dispute resolution procedures set forth in Section XVIII (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendant shall have the burden of demonstrating by a

preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendant complied with the requirements of Paragraphs 63 and 64, above. If Settling Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Settling Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XVIII. DISPUTE RESOLUTION

67. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Settling Defendant that have not been disputed in accordance with this Section.

68. Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

69. Statements of Position.

a. In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, and the period for informal negotiations has not been modified pursuant to Paragraph 68 above, then the position advanced by EPA shall be considered binding unless, within 5 business days after the conclusion of the informal negotiation period, Settling Defendant notifies EPA in writing of its decision to invoke the formal dispute resolution procedures of this Section and, within 14 business days after conclusion of the informal negotiation period, serve upon the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by Settling Defendant. If the period for informal negotiations has been modified pursuant to Paragraph 68, then the position advanced by EPA shall be considered binding unless, within 5 business days of Settling Defendant's receipt of EPA's written notice that the period of informal negotiations has ended, Settling Defendant notifies EPA in writing of its decision to invoke the formal dispute resolution procedures of this Section and, within 14 business days after conclusion of the informal negotiation period, serve upon the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by Settling Defendant. In either event, the Statement of Position shall specify Settling Defendant's position as to whether formal dispute resolution should proceed under Paragraph 70 or Paragraph 71.

b. Within 21 days after receipt of Settling Defendant's Statement of Position, EPA will serve on Settling Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied

- 34 -

upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 70 or 71. Within 14 days after receipt of EPA's Statement of Position, Settling Defendant may submit a Reply.

c.    If there is disagreement between EPA and Settling Defendant as to whether dispute resolution should proceed under Paragraph 70 or 71, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if Settling Defendant ultimately appeals to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 70 and 71.

70.    Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action, including the modification of the SOW or any related work plans, and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendant regarding the validity of the ROD's provisions.

a.    An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.    The Director of the Superfund Division, EPA Region 5, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 70.a. This decision shall be binding upon Settling Defendant, subject only to the right to seek judicial review pursuant to Paragraph 70.c and d.

c.    Any administrative decision made by EPA pursuant to Paragraph 70.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Defendant with the Court and served on all Parties within 10 business days of receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Defendant's motion.

d.    In proceedings on any dispute governed by this Paragraph, Settling Defendant shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 70.a.

71.    Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.    Following receipt of Settling Defendant's Statement of Position submitted pursuant to Paragraph 69, the Director of the Superfund Division, EPA Region 5, will issue a final decision resolving the dispute. The Superfund Division Director's decision shall be binding on Settling Defendant unless, within 10 business days of receipt of the decision, Settling Defendant files with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendant's motion.

b.    Notwithstanding Paragraph M of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

72.    The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of Settling Defendant under this Consent Decree not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 81. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that Settling Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XIX (Stipulated Penalties).

## XIX. STIPULATED PENALTIES

73.    Settling Defendant shall be liable for stipulated penalties in the amounts set forth in Paragraphs 74 and 75 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVII (Force Majeure). "Compliance" by Settling Defendant shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

74.    Stipulated Penalty Amounts - Work.

a.    The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Subparagraph 74.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $750.00 | 1st through 14th day |
| $1,000 | 15th through 30th day |
| $1,500 | 31st day and beyond |

b.    Compliance Milestones.

(1)    Failure to submit and, if required by EPA, modify any and all draft and final Remedial Design and Remedial Action Work Plans in accordance with the schedule and requirements set forth in this Consent Decree and the attached SOW;

(2)    Failure to submit and, if required by EPA, modify any significant deliverables as identified in the EPA approved Remedial Design and Remedial Action Work Plans in accordance with the schedule and requirements set forth in this Consent Decree and the attached SOW;

(3)    Failure to implement the approved Remedial Design and Remedial Action Work Plans in accordance with the schedule and requirements set forth in this Consent Decree and the attached SOW;

(4)    Failure to submit and, if required by EPA, modify Preliminary Pre-Final and Final Remedial Design and any significant deliverables as identified in the approved Final Remedial Design(s) in accordance with the schedule and requirements set forth in this Consent Decree and the attached SOW;

(5)    Failure to complete the Remedial Action(s) required under this Consent Decree and the attached SOW in accordance with the schedule and requirements set forth in those documents;

(6)    Failure to submit and, if required by EPA, modify Remedial Action Reports in accordance with the schedule and requirements set forth in this Consent Decree and the attached SOW;

(7)    Failure to submit and, if required by EPA, modify the O&M Plan in accordance with the schedule and requirements set forth in this Consent Decree and the attached SOW;

(8)    Failure to perform further response actions and additional Work in accordance with the schedule and requirements set forth in Sections V and VII of this Consent Decree;

(9)    Failure to obtain access and/or institutional controls in accordance with the schedule and requirements set forth in Section VIII of this Consent Decree.

- 37 -

75. Stipulated Penalty Amounts - Reports.

a. The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other written documents pursuant to this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $100 | 1st through 14th day |
| $250 | 15th through 30th day |
| $500 | 31st day and beyond |

76. In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 90 of Section XX (Covenants Not to Sue by Plaintiff), Settling Defendant shall be liable for a stipulated penalty in the amount of $250,000.

77. The following stipulated penalties shall accrue for each day Settling Defendant fails to pay in a timely manner any costs required under Section XV (Payments):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day |
| $1,000 | 15th through 30th day |
| $2,000 | 31st day and beyond |

78. All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (1) with respect to a deficient submission under Section X (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendant of any deficiency; (2) with respect to a decision by the Director of the Superfund Division, EPA Region 5, under Paragraph 70.b or 71.a of Section XVIII (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendant's reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XVIII (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

79. Following EPA's determination that Settling Defendant has failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendant written notification of the same and describe the noncompliance. EPA may send Settling Defendant a written demand

- 38 -

for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified Settling Defendant of a violation.

80.    All penalties accruing under this Section shall be due and payable to the United States within 30 days of Settling Defendant's receipt from EPA of a demand for payment of the penalties, unless Settling Defendant invokes the Dispute Resolution procedures under Section XVIII (Dispute Resolution). All payments to the United States under this Section shall be paid by certified or cashier's check(s) made payable to "EPA Hazardous Substances Superfund," shall be mailed to U.S. EPA, Region 5, P.O. Box 371531, Pittsburgh, PA 15251-7531, shall indicate that the payment is for stipulated penalties, and shall reference the EPA Region and Site/Spill ID #059B, the DOJ Case #90-11-2-07912, and the name and address of the party making payment. Copies of check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to the United States as provided in Section XXV (Notices and Submissions).

81.    The payment of penalties shall not alter in any way Settling Defendant's obligation to complete the performance of the Work required under this Consent Decree.

82.    Penalties shall continue to accrue as provided in Paragraph 78 during any dispute resolution period, but need not be paid until the following:

        a.    If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within 20 business days of the agreement or the receipt of EPA's decision or order;

        b.    If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendant shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

        c.    If the District Court's decision is appealed by any Party, Settling Defendant shall pay all accrued penalties determined by the District Court to be owing to the United States into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 20 business days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendant to the extent that it prevails.

83.    If Settling Defendant fails to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as interest. Settling Defendant shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 80.

84.    Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendant's violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties

pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

85.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XX. COVENANTS NOT TO SUE BY UNITED STATES

86.     General Scope of Covenant. In consideration of the actions that will be performed and the payments that will be made by Settling Defendant under the terms of the Consent Decree, and except as specifically provided in Paragraphs 87, 88, 90 and 92 of this Section, the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA for performance of the Work and for recovery of EPA Past Response Costs and Future Costs. Except with respect to future liability, these covenants not to sue shall take effect upon receipt by EPA of the payments required by Paragraph 56.a of Section XV (Payments) and any Interest or stipulated penalties due thereon under Paragraphs 59 and 73. With respect to future liability, these covenants not to sue shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 52.b of Section XIII (Certification of Completion) and receipt of payment for Future Costs pursuant to Paragraph 57 and any Interest or stipulated penalties due thereon under Paragraphs 59 and 73. These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree. These covenants not to sue extend only to Settling Defendant and do not extend to any other person.

87.     United States' Pre-certification Reservations. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendant

          a.     to perform further response actions relating to OU2, or

          b.     to reimburse the United States for additional costs of response if, prior to Certification of Completion of the Remedial Action:

                    (1)     conditions at OU2, previously unknown to EPA, are discovered, or

                    (2)     information, previously unknown to EPA, is received, in whole or in part,

and EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

88.     United States' Post-certification Reservations. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendant

- 40 -

a. to perform further response actions relating to OU2, or

b. to reimburse the United States for additional costs of response if, subsequent to Certification of Completion of the Remedial Action:

(1) conditions at OU2, previously unknown to EPA, are discovered, or

(2) information, previously unknown to EPA, is received, in whole or in part,

and EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

89. For purposes of Paragraph 87, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date the ROD was signed and set forth in the Record of Decision for OU2 and the administrative record supporting the Record of Decision. For purposes of Paragraph 88, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

90. General reservations of rights. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within Plaintiff's covenant not to sue. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendant with respect to:

a. claims based on a failure by Settling Defendant to meet a requirement of this Consent Decree;

b. liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of OU2;

c. liability based on transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at OU2, other than as provided in the ROD, the Work, or otherwise ordered by EPA or authorized by law, after signature of this Consent Decree by Settling Defendant;

d. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

e. criminal liability;

f. liability for violations of federal or state law which occur during or after implementation of the Remedial Action; and

- 41 -

g. liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 14 (Modification of the SOW or Related Work Plans);

h. liability for additional operable units at the Site or the final response action, including Operable Unit 5, the Kalamazoo River; and

i. liability for costs that the United States has incurred or will incur related to the Site but are not within the definitions of EPA Past Response Costs or Future Costs in Paragraph 4 (Definitions).

91. Work Takeover

a. In the event EPA determines that Settling Defendant has (i) ceased implementation of any portion of the Work, or (ii) is seriously or repeatedly deficient or late in its performance of the Work, or (iii) is implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Settling Defendant. Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Defendant a period of 10 days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b. If, after expiration of the 10-day notice period specified in Paragraph 91.a, Settling Defendant has not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portions of the Work as EPA deems necessary ("Work Takeover"). EPA shall notify Settling Defendant in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this subparagraph.

c. Settling Defendant may invoke the procedures set forth in Section XVIII (Dispute Resolution), Paragraph 70, to dispute EPA's implementation of a Work Takeover under Paragraph 91.b. However, notwithstanding Settling Defendant's invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 91.b until the earlier of (i) the date that Settling Defendant remedies, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice or (ii) the date that a final decision is rendered in accordance with Section XVIII (Dispute Resolution), Paragraph 70, requiring EPA to terminate such Work Takeover.

d. After commencement and for the duration of any Work Takeover, EPA shall have immediate access to and benefit of any performance guarantee(s) provided pursuant to Section XII of this Consent Decree, in accordance with the provisions of Paragraph 50 of that Section. If and to the extent that EPA is unable to secure the resources guaranteed under any such performance guarantee(s) and Settling Defendant fails to remit a cash amount up to but not exceeding the estimated cost of the remaining Work to be performed, all in accordance with the provisions of Paragraph 50, any unreimbursed costs incurred by EPA in performing Work under

the Work Takeover shall be considered Future Costs that Settling Defendant shall pay pursuant to Section XV (Payments).

92. Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXI. COVENANTS BY SETTLING DEFENDANT

.93. Covenant Not to Sue. Subject to the reservations in Paragraph 95, Settling Defendant hereby covenants not to sue and agrees not to assert any claims or causes of action against the United States with respect to the Work; past response actions; EPA Past Response Costs as defined herein; and Future Costs as defined herein; or this Consent Decree, including, but not limited to:

a. any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

b. any claims' against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113 related to OU2, or

c. any claims arising out of response actions at or in connection with OU2, including any claim under the United States Constitution, the Michigan Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

94. Except as provided in Paragraph 97 (Waiver of Claims Against De Micromis Parties) and Paragraph 102 (waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply in the event that the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 87, 88, 90 (b) - (d) or 90 (g) - (i), but only to the extent that Settling Defendant's claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

95. Settling Defendant reserves, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of Settling Defendant's plans or activities. The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

- 43 -

96. Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

97. Settling Defendant agrees not to assert any claims and to waive all claims or causes of action that it may have for all matters relating to OU2, including for contribution, against any person where the person's liability to Settling Defendant with respect to OU2 is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at OU2, or having accepted for transport for disposal or treatment of hazardous substances at OU2, if:

   a.    the materials contributed by such person to OU2 containing hazardous substances did not exceed the greater of (i) 0.002% of the total volume of waste at OU2, or (ii) 110 gallons of liquid materials or 200 pounds of solid materials.

   b.    this waiver shall not apply to any claim or cause of action against any person meeting the above criteria if EPA has determined that the materials contributed to OU2 by such person contributed or could contribute significantly to the costs of response at OU2. This waiver also shall not apply with respect to any defense, claim, or cause of action that Settling Defendant may have against any person if such person asserts a claim or cause of action relating to OU2 against Settling Defendant.

## XXII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

98. Except as provided in Paragraph 97 (Waiver of Claims Against De Micromis Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this decree may have under applicable law. Except as provided in Paragraph 97 (Waiver of Claims Against De Micromis Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to OU2 against any person not a Party hereto.

99. The Parties agree, and by entering this Consent Decree this Court finds, that Settling Defendant isentitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for matters addressed in this Consent Decree. The "matters addressed" in this Consent Decree are solely the Work; Past Response Costs; and Future Costs. The "matters addressed" in this Consent Decree do not include response actions or response costs with respect to any other area or operable unit at the Site, including Operable Unit 5, the Kalamazoo River, or those response actions or those response costs as to which the United States has reserved its rights in Paragraphs 87, 88, 89, and 90 of this Consent Decree (except for claims for failure to comply with this Consent Decree).

100. Settling Defendant agrees that with respect to any suit or claim for contribution brought by it for matters related to this Consent Decree, it will notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

101. Settling Defendant also agrees that with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree, it will notify in writing the United States within 10 days of service of the complaint on it. In addition, Settling Defendant shall notify the United States within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

102. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XX (Covenants Not to Sue by Plaintiff).

## XXIII. ACCESS TO INFORMATION

103. Settling Defendant shall provide to EPA, upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to activities at OU2 or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. Settling Defendant shall also make available to EPA, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

104. Business Confidential and Privileged Documents.

a. Settling Defendant may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies documents or information when they are submitted to EPA, or if EPA has notified Settling Defendant that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to Settling Defendant.

b. Settling Defendant may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendant asserts such a privilege in lieu of providing documents, it shall provide the Plaintiff with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information: and (6) the privilege asserted by Settling Defendant. If a claim of privilege applies only to a portion of a document, record or

- 45 -

other information, such information shall be provided to the United States in redacted form to mask the privileged portion only. Settling Defendant shall retain all documents, records and other information that it claims to be privileged until the United States has had an opportunity to dispute the privilege claim and any such dispute has been resolved. No documents, reports or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged or confidential.

105. No claim of privilege or confidentiality shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around OU2.

## XXIV. RETENTION OF RECORDS

106. Until 10 years after Settling Defendant's receipt of EPA's notification pursuant to Paragraph 53.b of Section XIV (Certification of Completion), Settling Defendant shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to its liability under CERCLA with respect to OU2 or that relate to the liability of any other person under CERCLA with respect to OU2. Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any documents or records (including documents or records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned documents required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

107. At the conclusion of this document retention period, Settling Defendant shall notify the United States at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States, Settling Defendant shall deliver any such records or documents to EPA. Settling Defendant may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendant asserts such a privilege, it shall provide Plaintiff with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Settling Defendant. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

108. Settling Defendant hereby certifies that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to its potential liability regarding OU2 since notification of potential liability by the United States or

the State or the filing of suit against it regarding OU2 and that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. 6927.

## XXV. NOTICES AND SUBMISSIONS

109.    Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, the State, the Trustees, and Settling Defendant, respectively.

<u>As to the United States:</u>

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Re:  DJ # 90-11-2-07912

<u>As to EPA:</u>

Director, Superfund Division
U.S. EPA, Region 5, Mail Code:  S-6J
77 W Jackson Blvd.
Chicago, IL 60604-3590

Michael Berkoff
Remedial Project Manager
U.S. EPA, Region 5, Mail Code SR-6J
77 W Jackson Blvd.
Chicago, IL 60604-3590

Nicole Wood-Chi
Assistant Regional Counsel
U.S. EPA, Region 5, Mail Code C14-J
77 W Jackson Blvd.
Chicago, IL 60604-3590

Leslie Kirby-Miles
Associate Regional Counsel
U.S. EPA, Region 5, Mail Code C14-J
77 W Jackson Blvd.
Chicago, IL 60604-3590

As to EPA's Regional Financial Management Officer:

EPA Regional Financial Management Office
Anthony Audia, Chief
Program Accounting and Analysis Section
U.S. EPA, Region 5, Mail Code MF-10J
77 W Jackson Blvd.
Chicago, IL 60604-3590

As to the State:

Paul Bucholtz
Environmental Response Division
Michigan Department of Environmental Quality
Constitution Hall
525 West Allegan St.
P.O. Box 30426
Lansing, MI 48909-7926

As to the Trustees:

Lisa L. Williams, Ph.D
U.S. Fish and Wildlife Service
2651 Coolidge Road, Suite 101
East Lansing, MI 48823

Todd Goeks
NOAA Office of Response and Restoration
Mail Code SR-6J
77 W. Jackson Blvd.
Chicago, IL 60604-3590

Judith Gapp
Remediation and Redevelopment Division
Department of Environmental Quality
P.O. Box 30426
Lansing, MI 48909

Sharon Hanshue
MDNR -Fisheries Division
P.O. Box 30446
Lansing, MI 48909-7946

Polly A. Synk
Assistant Attorney General
Environment, Natural Resources,
and Agriculture Division
Department of Attorney General
P.O. Box 30755
Lansing, MI 48909

- 48 -

As to Settling Defendant:

> Patrick McGuire
> Principal Environmental Engineer
> Arcadis U.S. Inc.
> 6723 Towpath Road, Box 66
> Syracuse, NY 13214

## XXVI. EFFECTIVE DATE

110.    The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court, except as otherwise provided herein.

## XXVII. RETENTION OF JURISDICTION

111.    This Court retains jurisdiction over both the subject matter of this Consent Decree and Settling Defendant for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XVIII (Dispute Resolution) hereof.

## XXVIII. APPENDICES

112.    The following appendices are attached to and incorporated into this Consent Decree:

Appendix A is the Record of Decision for the Willow Boulevard/A-Site Landfill (OU2) dated September 27, 2006

Appendix B is a figure of OU2.

Appendix C is the SOW.

Appendix D is a map of the Site.

Appendix E is a draft Declaration of Restrictive Covenant and Environmental Easement

Appendix F is a draft environmental surety bond.

## XXIX. COMMUNITY RELATIONS

113.    Settling Defendant shall propose to EPA that it participate in the community relations plan to be developed by EPA. EPA will determine the appropriate role for Settling Defendant under the Plan. Settling Defendant shall also cooperate with EPA in providing information regarding the Work to the public. As requested by EPA, Settling Defendant shall

participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA to explain activities at or relating to OU2.

## XXX. MODIFICATION

114.    Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of EPA and Settling Defendant. All such modifications shall be made in writing.

115.    Material modifications to this Consent Decree, including the SOW, shall be in writing, signed by the Parties, and shall be effective upon approval by the Court. Non-material modifications to this Consent Decree, including the SOW, shall be in writing and shall be effective when signed by the Parties. A modification to the SOW shall be considered material if it fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii). Before providing its approval to any modification to the SOW, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXXI. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

116.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Consent Decree without further notice.

117.    If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXII. SIGNATORIES/SERVICE

118.    Each undersigned representative of a Settling Defendant to this Consent Decree and the Acting Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

119.    Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

120.    Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on its behalf with respect to all matters arising under or relating to this Consent Decree. Settling Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local

rules of this Court, including, but not limited to, service of a summons. The parties agree that Settling Defendant need not file an answer to the complaint in this action unless or until the court expressly declines to enter this Consent Decree.

XXXIII. FINAL JUDGMENT

121. This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the parties with respect to the settlement embodied in the Consent Decree. The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

122. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the United States and Settling Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

                         30th        September

SO ORDERED THIS_____DAY OF _____, 2009.

                                     /s/ Paul L. Maloney

                                   PAUL L. MALONEY
                                   Chief United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Georgia-Pacific, LLC, relating to the Allied Paper, Inc./Portage Creek/Kalamazoo River Superfund Site.

**FOR THE UNITED STATES OF AMERICA**

5/9/09
Date

JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

5/9/09
Date

RENITA Y. FORD
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

DONALD DAVIS
United States Attorney
Western District of Michigan

Date: 5/18/09

W. FRANCESCA FERGUSON
Assistant United States Attorney
Post Office Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404
Email: francesca.ferguson@usdoj.gov

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Georgia-Pacific, LLC, relating to the Allied Paper, Inc./Portage Creek/Kalamazoo River Superfund Site.

4/17/2009
Date

Bharat Mathur
Acting Regional Administrator, Region 5
U.S. Environmental Protection Agency
77 W. Jackson Boulevard
Chicago, IL 60604-3590

4/21/09
Date

Nicole Wood-Chi
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 W. Jackson Boulevard
Chicago, IL 60604-3590

4/21/09
Date

Leslie Kirby-Miles
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 W. Jackson Boulevard
Chicago, IL 60604-3590

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Georgia-Pacific, LLC, relating to the Allied Paper, Inc./Portage Creek/Kalamazoo River Superfund Site.

FOR Georgia-Pacific, LLC

March 27, 2009
Date

Signature: _____
Name (print): Garry T. Griffith
Title: Director Environmental Field Services
Address: 951 County Street
_____ Milan, Michigan 48160

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):
Title:
Address:



Ph. Number:

J. Michael Davis
Assistant General Counsel
Georgia-Pacific LLC
133 Peachtree Street  NE
Atlanta, GA 30303-1847
(404) 652-7497